THE STATE OF OHIO, APPELLEE, *v.* CLIFTON, APPELLANT.

(No. C-72004—Decided June 5, 1972.)

*Mr. Simon L. Leis, Jr.,* and *Mr. Donald L. Schott,* for appellee.

*Messrs. White & Getgey,* for appellant.

SHANNON, J. This is an appeal from a judgment of the Court of Common Pleas of Hamilton County, Ohio, entered upon a verdict finding the defendant, appellant herein, guilty of manslaughter in the first degree.

For our purposes in the resolution of the issues raised by the assignments of error, the facts may be set forth succinctly. A youth, approximately fourteen years of age, entered a news shop where the defendant, a young adult, was present and performing certain tasks as a friend of the proprietor. An altercation ensued in the course of which the child and the adult struggled. Glasses being worn by the defendant allegedly were knocked from his face and the youth's nose was bloodied. He went home and complained to his seventeen year old brother who, in the company of another brother and a friend, one James Hargrove (the deceased), returned with him to the news shop to ascertain the cause of the altercation. Being forewarned

of their return, defendant had taken a pistol from beneath a counter and placed it in the waistband of his trousers, where it was concealed by his shirt.

The group of four entered and confronted the defendant. An argument between the elder brother and defendant developed which was quieted when Hargrove suggested that the best way to settle the dispute was for the youth to "take out a warrant," whereupon they left the store. Very shortly thereafter, the elder brother re-entered, his testimony being that he had to obtain change for his bus fare. It is uncontroverted that while the defendant had his back turned, the elder brother struck him on the shoulder with a belt, the buckle of which left a discernible mark upon the flesh. Upon trial, defendant testified as follows: "[I] knew [I] was being attacked by them. And so when he hit me, I just drawed the gun and turned around and fired."

When the shot was fired, the victim and the brothers were fleeing from the premises. Hargrove suffered a wound in his right chest into the abdomen and expired during surgery less than eight hours later as a consequence thereof.

The accused relied upon self-defense as justification for the homicide, and testified that when he fired the weapon he was in fear of his life or bodily harm. The jury found defendant guilty of manslaughter as charged in the indictment.

Two errors have been assigned upon this appeal.

The first assignment is that the trial court erred in refusing to instruct as to conspiracy, it being contended that the jury thereby was precluded from considering the act of one, the assailant, to be the act of all in determining whether the defendant acted in self-defense. If the assault upon the accused by the elder brother had occurred during the initial visit of the group to the news shop, this assignment might have merit. However, it is clear from the record that when the accused was struck with the buckle of the belt there was no plan among the members of the group to perpetrate that act. In other words, there is nothing to show any concert of action to accomplish some crim-

inal or unlawful purpose. Clearly, mere association with one who perpetrates an unlawful act does not render a person *particeps criminis* so long as his acts are innocent. Therefore, in the absence of direct proof of a conspiracy or of facts from which the existence of such could be inferred, neither of which circumstances we find apparent in the record, it was not error for the court below to refuse to charge the jury as requested upon the law of conspiracy. The first assignment of error is without merit.

The second assignment of error is that prejudicial error was committed by the trial court in refusing to instruct the jury that a homicide is excusable or justified when one lawfully acting in self-defense kills an innocent bystander by a random shot, if the killing of the assailant would have been justifiable as done in self-defense.

This exact problem seems not to have been considered heretofore by any court in Ohio.

Basically, the prerequisites to the invocation of the right of self-defense are set forth in paragraph two of the syllabus in *Marts* v. *The State of Ohio,* 26 Ohio St. 162, which states:

"Homicide is justifiable on the ground of self-defense, where the slayer, in the careful and proper use of his faculties, *bona fide believes,* and has reasonable ground to believe, that he is in imminent danger of death or great bodily harm, and that his only means of escape from such danger will be by taking the life of his assailant, although in *fact* he is mistaken as to the existence or imminence of the danger."

The text writers state, in 27 Ohio Jurisprudence 2d 629, Homicide, Section 89, that:

"It is universally recognized that one is not punishable criminally for taking the life of another person when he has been put under the necessity or apparent necessity of doing so, without any fault on his part, in order to protect himself from the peril of death or serious bodily harm at the hands of the person whose life he took."

Clearly, one who kills in self-defense does so without the *mens rea* that otherwise would render him culpable of

the homicide. Therefore, if the act of taking the life of an assailant is not criminal does it become so when a stray shot kills a bystander?

It has been long accepted that if A shoots at B, intending to kill B, but instead the bullet strikes C, then A has committed a criminal act as to C. In such instance, the "malice follows the blow" and the criminal intent of A to harm B is transferred to C.

However, if A had no criminal intent with respect to B, as where A is exercising a lawful right of self-defense, none could exist as to C. It follows, then, that A in shooting C has not committed a criminal act, the essential of a *mens rea* being impossible of proof. The inquiry must be whether the killing would have been justifiable if the accused had killed the person whom he intended to kill, as the unintended act derives its character from the intended.

Therefore, we conclude that the second assignment of error is well taken. The jury was fully and correctly instructed as to the law pertaining to the asserted right to self-defense. However, the court erred in refusing to include an instruction that if the jury found that the accused was acting in self-defense when he fired the shot that killed James Hargrove, he would be entitled to acquittal even though Hargrove was not the assailant.

It is conceivable that from all the evidence and in obeying the instructions of the court the jury believed that defendant did prove self-defense as to the elder brother, but because of the void in the charge could not find the homicide of James Hargrove to be justifiable.

The judgment of the Court of Common Pleas of Hamilton County, Ohio, is reversed and the cause is remanded for a new trial.

*Judgment reversed and cause remanded.*

HESS, P. J., and YOUNG, J., concur.