DECISION.
Appellant William M. Miller was found guilty of one count of murder and one count of involuntary manslaughter for killing Brian Pilot. The trial court merged the counts for sentencing. Miller appeals his conviction, asserting one assignment of error. In the assignment, he challenges both the weight and the sufficiency of the evidence supporting his conviction. We find no merit in his appeal.
Pilot was living in an apartment with his cousin Craig Doherty and Michael Schoone. One evening Miller and Steven Bledsoe visited the apartment after celebrating Miller's twenty-first birthday. At one point, Doherty was sleeping in the bedroom, Schoone was sitting on the couch in the living room, and Miller, Pilot, and Bledsoe were talking in the kitchen. When Pilot walked past Miller, Bledsoe heard what he described as a "thud," and saw Pilot bend over and stumble away. Bledsoe asked Miller why he had punched Pilot. According to Bledsoe, Miller replied that he had not hit Pilot, but that he had stabbed him. Miller showed Bledsoe a steak knife.
Schoone heard Pilot yell Miller's name and saw Pilot stumble into the living room, holding his chest and bleeding. Pilot fell to the floor, hitting his head on a table. Schoone grabbed a pair of scissors to defend himself. He confronted Miller and Bledsoe in the hallway, where he told them to leave. To convince the men to leave, Schoone suggested telling the police that "some black guys" had stabbed Pilot.
During the ensuing confrontation, Miller had both of his hands behind his back, and Schoone heard a clicking noise. Schoone told Miller that if he had a gun, he should "pull it out right now." Miller responded, "I done killed one nigga up here in here and I'll kill another." Miller and Schoone began yelling at each other, and Miller pulled from behind his back a hunting knife and a steak knife. Both knives were from the kitchen. Schoone saw blood on the steak knife.
Bledsoe also asked Miller to leave. Miller responded by stating, "This is 30 years in the penitentiary" * * * "We should take everything they have" * * * "Let's kill them all." Schoone later testified that, at one point, Bledsoe and Miller blamed each other for the stabbing.
Schoone yelled Doherty's name, awakening him. Doherty saw Miller and Schoone arguing near the bedroom. According to Doherty, Miller was holding a grill fork, a pot and a knife; Schoone was holding a pair of scissors; and Bledsoe was holding a steak knife. Doherty heard Bledsoe trying to persuade Miller to leave. He heard Miller say, "I cut your boy. I'm killing you two next. I'm robbing you." Doherty called 911.
At one point, Bledsoe took the steak knife and put it in his pocket. Bledsoe ran from the apartment and threw the knife into a neighbor's yard, where he later helped the police find it. Miller went to the bedroom and lay on the bed. When a Cincinnati police officer entered the room, he observed Miller sleeping. When the officer turned around, he saw Miller open and then quickly close his eyes. According to the testimony, Miller feigned ignorance of the events surrounding the killing and asked what had happened.
Miller's defense was that Bledsoe had stabbed Pilot. Miller demonstrated that there were discrepancies within Bledsoe's story and among the various state witnesses, and presented evidence that several of his acquaintances had described Bledsoe as a "big liar." The evidence also demonstrated that, among other theories, Pilot's wound was consistent with a left-handed assailant, and that Miller was right-handed.
A defense witness testified that on the night of the stabbing Bledsoe had thrown a beer bottle through a gas-station window. Another defense witness testified that Bledsoe had blood on his shirt and body, including his left hand, at some time after the stabbing. According to the witness, Bledsoe had told her that the blood had splattered on him when he tried to stop Pilot's wound from bleeding. A criminalist testified that the shirt taken from Bledsoe was clean, but that it was possible to remove bloodstains by laundering clothing.
Miller argues that the evidence was insufficient to prove murder, and that the trial court erred by denying his Crim.R. 29 motions. Specifically, Miller argues that the state failed to prove that he had purposely caused Pilot's death. Miller also argues that the evidence was insufficient to prove involuntary manslaughter, because the state failed to show that he had caused Pilot's death by committing or attempting to commit felonious assault.
Miller's sufficiency-of-the-evidence challenge requires us to examine the evidence presented at trial and to determine whether that evidence, viewed in a light most favorable to the state, could have convinced any reasonable trier of fact beyond a reasonable doubt that Miller had committed murder by purposely causing Pilot's death, or that he had committed involuntary manslaughter by causing Pilot's death as a proximate result of committing felonious assault.[1] Similarly, in reviewing the trial court's denial of Miller's Crim.R. 29 motions as to each offense, we must determine whether the evidence was "such that reasonable minds [could have] reach[ed] different conclusions" as to whether the state had proved each material element beyond a reasonable doubt.[2]
R.C. 2901.22(A) provides that "[a] person acts purposely when it is his specific intention to cause a certain result." A defendant's intent can be inferred from "all the surrounding circumstances, including the instrument used to produce death, its tendency to destroy life if designed for that purpose, and the manner of inflicting a fatal wound."[3] Also, "a person is presumed to intend the natural, reasonable and probable consequences of his voluntary acts."[4]
In this case, the evidence adduced at trial was sufficient to demonstrate that, by deliberately stabbing Pilot in the chest with an instrument capable of causing death, Miller had intended to kill Pilot.
As for the charge of involuntary manslaughter, the state had the burden to prove beyond a reasonable doubt that Miller had caused Pilot's death as a proximate result of committing the underlying offense of felonious assault.[5] The state presented sufficient evidence to permit the jury to conclude beyond a reasonable doubt that Miller had caused Pilot's death. Bledsoe thought that Miller had punched Pilot. Miller told Bledsoe that he instead had stabbed Pilot and showed Bledsoe the steak knife. Other witnesses testified that Miller had said that he had killed Pilot, and a deputy coroner testified that Pilot had died from the stab wound to the right side of his chest.
The state also had the burden to prove beyond a reasonable doubt that Miller had committed felonious assault, the underlying offense. To prove felonious assault, the state had to show that Miller had knowingly caused physical harm to Pilot by means of a deadly weapon.[6] To act knowingly requires one to be "aware that his conduct will probably cause a certain result or will probably be of a certain nature."[7] The state presented sufficient evidence for the jury to conclude beyond a reasonable doubt that Miller had acted knowingly when he took a knife from the kitchen and stabbed Pilot, that Miller had caused Pilot physical harm (the coroner testified that the stab wound caused Pilot's death), and that the knife Miller used was a deadly weapon in that it was capable of inflicting death and was used as a weapon.
Further, we conclude that the trial court did not err in overruling Miller's motions for acquittal on either the murder or the involuntary-manslaughter charge. The evidence was such that reasonable minds could have reached different conclusions as to whether Miller had committed each offense.
To reverse Miller's conviction on the manifest weight of the evidence, we must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and conclude that the jury clearly lost its way and created a manifest miscarriage of justice.[8] The jury was free to believe all, part, or none of each witness's testimony.[9] While Miller emphasizes certain alleged weaknesses in the state's evidence, such as discrepancies in the testimony and the lack of direct physical evidence of Miller's involvement in Pilot's murder, we cannot say that the jury lost its way and created a manifest miscarriage of justice. Because we conclude that Miller's conviction was supported by sufficient evidence and was not against the weight of the evidence, we overrule Miller's assignment and affirm the judgment of the trial court.
 ______________________________ Painter, Judge.
 Hildebrandt, P.J., and Sundermann, J., concur.
[1] See State v. Jenks (1991), 61 Ohio St.3d 259-260, 574 N.E.2d 492, paragraph two of the syllabus.
[2] See State v. Bridgeman (1978), 55 Ohio St.2d 261, 381 N.E.2d 184, syllabus.
[3] See State v. Robinson (1999), 132 Ohio App.3d 830, 838,726 N.E.2d 581, 586, quoting State v. Robinson (1954), 161 Ohio St. 213,118 N.E.2d 517, 518, paragraph five of the syllabus.
[4] See State v. Johnson (1978), 56 Ohio St.2d 35, 39, 381 N.E.2d 637,640.
[5] See R.C. 2903.04(A).
[6] See R.C. 2903.11(A)(2).
[7] See R.C. 2901.22(B).
[8] See State v. Martin (1983), 20 Ohio App.3d 172, 175, 485 N.E.2d 717,720.
[9] See State v. Antill (1964), 176 Ohio St. 61, 67, 197 N.E.2d 548,553.