DECISION AND JUDGMENT ENTRY
{¶ 1} David W. Howard, Jr. appeals his two felonious assault convictions after a jury trial in the Ross County Common Pleas Court. On appeal, Howard contends that the jury's finding that he did not act in self-defense, as to the male victim, was against the manifest weight of the evidence. Because substantial evidence supports the jury's verdict, we disagree. Howard next contends that the trial court ignored the doctrine of transferred intent of self-defense when it refused to give the self-defense instruction in the assault involving the female victim. Because, any error caused by the trial court's *Page 2 
refusal to give the instruction did not prejudice Howard, we disagree. Accordingly, we affirm the judgment of the trial court. I. {¶ 2} In 2006, a Ross County Grand Jury indicted Howard on two counts of felonious assault. Howard entered not guilty pleas and the matter proceeded to a jury trial.
 {¶ 3} At trial, the testimony established that the incident stemmed from Howard's drug manufacturing enterprise. Howard manufactured crystal meth for his use and the use of others. Beginning one evening and continuing into the morning of the next day, Howard and Marcus Horsley, along with others, partied by drinking alcohol and using meth and crack. It appears that various members of the party were shuttling back and forth from two nearby apartments. At one point during the party, Horsley got into an argument with Melissa Kuntz, and after a brief altercation, Horsley left the party with his girlfriend Andrea Seymour. However, Horsley and Seymour later returned to Kuntz's apartment looking for Howard and meth.
 {¶ 4} A disagreement followed Horsley's return. Horsley wanted Howard to make more meth (or at least give him some). They went outside and Horsley knocked a jar of nearly finished drugs out of Howard's hand. Horsley claimed that he slapped the meth out of Howard's hand because he did not want him to consume it. The argument continued, and Seymour attempted to intervene and stop the argument.
 {¶ 5} At this point, except for the blow to the jar, neither Horsley nor Howard threw any physical blows. Horsley did testify that he was going to "kick his ass." Seymour *Page 3 
testified that the fight was just a lot cussing and yelling. According to Howard, he believed an attack was imminent and that Horsley had a scalpel. However, no one else witnessed Horsley with a scalpel at that time, though Kuntz testified that Horsley earlier threatened Howard by telling him he had a scalpel.
 {¶ 6} The incident escalated when Howard opened a jar of "liquid fire," a drain cleaning acid used in the meth manufacturing process, and threw its contents on both Horsley and Seymour. The acid burned their flesh, ultimately requiring significant medical intervention. Howard fled and disposed of the empty bottle in a nearby parking lot.
 {¶ 7} Officers ultimately apprehended and interviewed Howard. In the first interview, he denied throwing the bottle and claimed Horsley threw it. He also denied making meth. However, in the second interview, he admitted that he made meth. Howard originally stated that the scalpel had no purpose, but he testified that it was used in the manufacture and sale of the meth. He also claimed to have picked it up after he threw the acid on Horsley, who had just dropped it. He claimed to have hidden it in his jacket. Officers recovered his jacket but did not find the scalpel. Howard also admits that he was intoxicated at the time of the incident as a result of his use of various substances.
 {¶ 8} At trial, Howard requested self-defense jury instructions for both of his felonious assault charges. The trial court, over Howard's objection, only gave the self-defense instruction for the felonious assault involving victim Horsley. The jury returned *Page 4 
guilty verdicts for both counts of felonious assault. The trial court sentenced Howard accordingly.
 {¶ 9} Howard appeals and asserts the following two assignments of error: I. "THE TRIAL COURT ERRED IN VIOLATION OF MR. HOWARD'S RIGHT TO DUE PROCESS OF LAW UNDER THE FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND ARICLE I SECTION 16 OF THE OHIO CONSTITUTION IN UPHOLDING THE JURY'S VERDICTS WHEN THE VERDICTS WERE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE." II. "THE TRIAL COURT ERRED IN VIOLATION OF MR. HOWARD'S RIGHT TO DUE PROCESS OF LAW UNDER THE FIFTH
AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND ARICLE I SECTION 16 OF THE OHIO CONSTITUTION IN REFUSING TO GIVE A SELF-DEFENSE INSTRUCTION AS TO COUNT ONE OF THE INDICTMENT." II. {¶ 10} In his first assignment of error, Howard contends that the verdict of felonious assault involving victim Horsley was against the manifest weight of the evidence. He does not dispute that the state proved the elements of felonious assault, but contends that he, in turn, proved that he acted in self-defense.
 {¶ 11} An appellate court, when determining whether a criminal conviction is against the manifest weight of the evidence, "will not reverse a conviction where there is substantial evidence upon which the [trier of fact] could reasonably conclude that all the elements of an offense have been proven beyond a reasonable doubt." State v. *Page 5 Eskridge (1988), 38 Ohio St.3d 56, paragraph two of the syllabus. See, also, State v. Smith, Pickaway App. No. 06CA7, 2007-Ohio-502, ¶ 41. We "must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial granted."Smith at ¶ 41, citing State v. Garrow (1995), 103 Ohio App.3d 368,370-71; Martin at 175. However, "[o] n the trial of a case, * * * the weight to be given the evidence and the credibility of the witnesses are primarily for the trier of the facts." State v. DeHass (1967),10 Ohio St.2d 230, paragraph one of the syllabus.
 {¶ 12} R.C. 2903.11(A)(1) provides that "[n] o person shall knowingly * * * [c] ause serious physical harm to another[.] "In Ohio, the affirmative defense of self-defense has three elements: (1) the defendant was not at fault in creating the violent situation, (2) the defendant had a bona fide belief that he was in imminent danger of death or great bodily harm and that his only means of escape was the use of force, and (3) that the defendant did not violate any duty to retreat or avoid the danger. State v. Williford (1990), 49 Ohio St.3d 247, 249, citing State v. Robbins (1979), 58 Ohio St.2d 74, paragraph two of the syllabus. The defendant must prove these three elements of self-defense by a preponderance of the evidence. Williford at 249.
 {¶ 13} The level of force used to defend one's self must be "necessary and reasonable under the facts and circumstances of the case and in view of the danger *Page 6 
apprehended." Martin v. Central Ohio Transit Auth. (1990),70 Ohio App.3d 83, 93, see also City of Akron v. Dokes (1986),31 Ohio App.3d 24, 25.
 {¶ 14} Here, the record reveals two basic versions of the relevant events. According to the state's evidence, Horsley and Howard argued. They exchanged words. Horsley slapped a jar out of Howard's hand, which contained chemicals used to manufacture methamphetamine. Howard responded by grabbing a bottle of "liquid fire", i.e., a bottle of acidic drain cleaner, and threw the acid on Horsley and his girlfriend, Seymour. Seymour was not part of the argument. However, she intervened to try to calm Horsley. She tried to pull Horsley away and had her arm around him when Howard doused them with acid, causing severe chemical burns.
 {¶ 15} According to the defense version, Horsley wanted drugs from Howard. Horsley had some sort of a knife (scalpel) or weapon on him when he threatened and struck Howard by knocking some drugs out of his hand. Then, in a split second, Howard doused Horsley with a chemical in self-defense. Howard immediately ran away because he was scared.
 {¶ 16} The jury, as the trier of fact, heard these two different versions of the events. The trier of fact is free to credit the testimony of the state's witnesses and discredit the testimony of the defense witnesses, in whole or in part. The jury "is best able to view the witnesses and observe their demeanor, gestures, and voice inflections, and use these observations in weighing the credibility of proffered testimony." Seasons Coal Co. v. Cleveland (1984),10 Ohio St.3d 77, 80. We will not intercede as long as the trier of fact has some factual and rational basis for its determination of credibility and weight. *Page 7 
 {¶ 17} Here, because Howard admitted throwing the acid on Horsley, the jury only needed to determine whether Howard's actions were justified on the ground of self-defense. The record shows three plausible reasons why the jury might have reasonably rejected Howard's self-defense claim.
 {¶ 18} First, the jury could have found that Howard was at fault in creating the violent situation. Howard claimed that Horsley had a scalpel, but no one found it. No one else saw the scalpel except Howard's sister, who failed to tell officers about it when they interviewed her. Howard claimed that after he threw the acid, the scalpel fell to the ground. He said that he picked it up and hid it in his jacket. However, the officers who recovered his jacket did not find it.
 {¶ 19} Seymour saw the relevant events. The crux of her testimony was that Horsley postured and yelled to get drugs. She said that Horsley was not becoming violent. In addition, Kuntz attacked Horsley earlier, and Horsley restrained from using any kind of physical force against her. So, the jury may have reasonably concluded that Howard was responsible for violently escalating the affray.
 {¶ 20} Second, the jury could have reasonably found that Howard used excessive force. If the jury believed that Horsley did not have a weapon ready at hand, then the jury could have concluded that throwing acid on someone who is merely threatening you is excessive and unreasonable under the circumstances.
 {¶ 21} Third, the jury could have reasonably found that Howard had a duty to retreat. Howard had no problem fleeing after he threw the acid. The state presented testimony and photographs that demonstrated that nothing prevented Howard from escaping. *Page 8 
 {¶ 22} Therefore, after carefully reviewing the evidence presented at trial, we conclude that the jury did not clearly lose its way or create a manifest miscarriage of justice by rejecting Howard's claim of self-defense and finding Howard guilty of felonious assault. We find that substantial, credible evidence supports the jury's verdict. Consequently, the jury's verdict is not against the manifest weight of the evidence.
 {¶ 23} Accordingly, we overrule Howard's first assignment of error.
 III. {¶ 24} Howard contends in his second assignment of error that the trial court erred when it refused to give a self-defense jury instruction as to the felonious assault involving victim Seymour. He asserts that, as a matter of law, the trial court had to give the instruction because the doctrine of transferred intent applies to self-defense.
 {¶ 25} When we review a trial court's jury instructions, we must consider the jury instructions as a whole, rather than viewing an instruction in isolation, and then determine whether the jury charge probably misled the jury in a matter materially affecting the complaining party's substantial rights. See Becker v. Lake Cty. Mem.Hosp. West (1990), 53 Ohio St.3d 202, 208; see, also, State v. Coe,153 Ohio App.3d 44, 2003-Ohio-2732. We must not reverse a conviction due to error in the jury instructions unless the error is so prejudicial that it may induce an erroneous verdict. See Parma Hts. v. Jaros (1990),69 Ohio App.3d 623, 630; State v. Speakman, Pickaway App. No. 00CA035, 2001-Ohio-2437.
 {¶ 26} "A criminal defendant has the right to expect that the trial court will give complete jury instructions on all issues raised by the evidence." State v. Cousins (Aug. *Page 9 
14, 1991), Ross App. No. 1735. Generally, a trial court should give a proposed jury instruction if it is a correct statement of the law and is applicable to the facts of the particular case. Murphy v. CarrolltonMfg. Co. (1991), 61 Ohio St.3d 585, 591.
 {¶ 27} Our review is de novo. State v. Depew, Ross App. No. 00CA2562, 2002-Ohio-6158, ¶ 24 ("While a trial court has some discretion in the actual wording of an instruction, the issue of whether an instruction is required presents a question of law for de novo review."), quotingState v. Powell (Sept. 29, 1997), Ross App. No. 96CA2257.
 {¶ 28} Under Ohio law, self-defense is an affirmative defense.State v. Williford (1990), 49 Ohio St.3d 247, 249. A defendant must meet the burden of going forward with evidence of a nature and quality sufficient to raise an affirmative defense. See R.C. 2901.05; State v.Cross (1979), 58 Ohio St.2d 482, fn. 5; State v. Abner (1978),55 Ohio St.2d 251. The trial court, as a matter of law, cannot give a jury instruction on an affirmative defense if a defendant fails to meet this burden. See, Cross at fn. 5; Abner at 253-254; State v. Melchior (1978),56 Ohio St.2d 15, 20; State v. Toth (1977), 52 Ohio St.2d 206, 212. As we stated earlier, in order to establish self-defense, a defendant must prove three elements by a preponderance of the evidence.
 {¶ 29} "The proper standard for determining in a criminal case whether a defendant has successfully raised an affirmative defense under R.C.2901.05 is to inquire whether the defendant has introduced sufficient evidence which, if believed, would raise a question in the minds of reasonable men concerning the existence of such issue."Melchior at paragraph one of the syllabus. A trial court does not err by refusing to *Page 10 
instruct on self-defense when the defendant fails to produce sufficient evidence to support that defense. State v. Nichols, Scioto App. No. 01CA2775, 2002-Ohio-415.
 {¶ 30} Here, the parties do not dispute that Howard successfully produced sufficient evidence to support a self-defense jury instruction as it relates to victim Horsley. The court gave such an instruction. However, Howard claims that victim Seymour was a bystander. As such, he maintains that the court had to also give the self-defense instruction as it relates to her because of the doctrine of transferred intent of self-defense. Howard asserts that just as the doctrine of transferred intent applies in a felonious assault charge as to the mens rea of a criminal defendant, the same doctrine applies when self-defense is asserted. He cites State v. Clifton (1972), 32 Ohio App.2d 284, 286-287
in support.
 {¶ 31} "The doctrine of transferred intent indicates that where an individual is attempting to harm one person and as a result accidentally harms another, the intent to harm the first person is transferred to the second person and the individual attempting harm is held criminally liable as if he both intended to harm and did harm the same person."State v. Mullins (1992), 76 Ohio App.3d 633, 636, 602 N.E.2d 769.
 {¶ 32} In Clifton, a jury found the defendant guilty of manslaughter. He appealed. The First District Court of Appeals held that the trial court should have instructed the jury that when a defendant acts in self-defense as to an attack by one person and a second person is accidentally killed, it is not a crime as it relates to the second person. The Clifton court did not directly talk about the doctrine of transferred intent of self-defense. *Page 11 
 {¶ 33} Here, nevertheless, we will assume, without deciding, that the doctrine of transferred intent of self-defense applies and that the trial court erred with it failed to give the self-defense instruction as it relates to victim Seymour. However, we are not finished with our analysis because the trial court's error must be prejudicial.Jams, supra; Speakman, supra. That is, the error must produce an erroneous verdict. Id.
 {¶ 34} We find that any error committed by the trial court's refusal to give the instruction is harmless. In Howard's first assignment of error, we found that the jury's verdict as it relates to victim Horsley was not against the manifest weight of the evidence. The jury, to reach its verdict, had to find that Howard did not act in self-defense as it relates to victim Horsley.
 {¶ 35} Therefore, if the trial court had instructed the jury on the doctrine of transferred intent of self-defense as it relates to victim Seymour, then the jury would have found that Howard did not act in self-defense as to both Horsley and Seymour. Consequently, any error by the trial court did not prejudice Howard. {¶ 36} Accordingly, we overrule Howard's second assignment of error and affirm the judgment of the trial court.
 JUDGMENT AFFIRMED. *Page 12 
 JUDGMENT ENTRY
It is ordered that the JUDGMENT BE AFFIRMED, and Appellee recover of Appellant costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Ross County Common Pleas Court to carry this judgment into execution.
If a stay of execution of sentence and release upon bail has been previously granted by the trial court or this court, it is continued for a period of sixty days upon the bail previously posted. The purpose of said stay is to allow appellant to file with the Ohio Supreme Court an application for a stay during the pendency of proceedings in that court. The stay as herein continued will terminate in any event at the expiration of the sixty day period.
The stay shall terminate earlier if the appellant fails to file a notice of appeal with the Ohio Supreme Court in the forty-five day appeal period pursuant to Rule II, Sec.2 of the Rules of Practice of the Ohio Supreme Court. Additionally, if the Ohio Supreme Court dismisses the appeal prior to expiration of said sixty days, the stay will terminate as of the date of such dismissal.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.
McFarland, P.J.: Concurs in Judgment Only. Harsha, J.: Concurs in Judgment and Opinion. *Page 1