The STATE of Ohio, Appellee,

v.

KERSHAW, Appellant.

[Cite as *State v. Kershaw* (1999), 132 Ohio App.3d 243.]

Court of Appeals of Ohio,
First District, Hamilton County.

No. C–980164.

Decided Feb. 5, 1999.

*Joseph T. Deters,* Hamilton County Prosecuting Attorney, and *Phillip R. Cummings,* Assistant Prosecuting Attorney, for appellee.

*Raul E. Tellez,* for appellant.

---

PAINTER, Judge.

Defendant-appellant, Delores Kershaw, appeals the judgment of the Hamilton County Court of Common Pleas convicting her of voluntary manslaughter, R.C. 2903.03. For the reasons that follow, we affirm that judgment in part, reverse it in part, and remand the cause for resentencing.

In the early morning hours of November 2, 1997, Leona Anderson arrived at Kershaw's residence looking for Kershaw's brother. Anderson was highly intoxicated and yelled obscenities outside of the residence. Kershaw called the police, and shortly thereafter, Anderson left. Kershaw then advised the police to disregard the previous call.

Anderson returned to the Kershaw residence between 3:00 and 4:00 a.m. She was still intoxicated and again began yelling obscenities at the residence. This time, Kershaw yelled out of her bedroom window for Anderson to get away "or else I'm going to shoot your butt." She then retrieved a gun from her nightstand and went outside.

After leaving the residence, Kershaw fired a warning shot in an attempt to frighten Anderson. But this tactic did not work, and Kershaw began pursuing Anderson. After a brief pursuit that brought the two women onto the property of Kershaw's neighbor, Anderson began to advance toward Kershaw, telling her that she did not fear the gun.

While Anderson was advancing toward Kershaw, she had her hand in her jacket pocket. Kershaw fired another shot in the direction of Anderson, and Anderson continued to advance. Kershaw then fired a third shot that hit Anderson and proved fatal.

Kershaw was indicted for murder with a firearm specification, and the case proceeded to a jury trial in January 1998. The jury returned a verdict of guilty

on the lesser offense of voluntary manslaughter. The court sentenced Kershaw to ten years' incarceration, the maximum term of imprisonment for the offense, and to three years' actual incarceration for the firearm specification. This appeal followed.

## I. MAXIMUM SENTENCE

In her first assignment of error, Kershaw claims that the trial court erred in imposing the maximum sentence. This assignment is well taken.

Because she received the maximum sentence for the offense, Kershaw is entitled to *de novo* review of the sentence by this court.[1] Our review of the sentence is threefold. We must determine whether (1) the law provides for the sentence imposed, (2) the trial court complied with the purposes and principles of sentencing under R.C. 2929.11 and 2929.12 and followed the proper procedure in sentencing the defendant to a term of incarceration, and (3) the record supports the findings of the trial court in imposing the sentence.[2]

Kershaw concedes that the ten-year term of incarceration was provided for under the applicable law but contends that the trial court's sentence does not comply with the other two requirements. She first contends that the trial court erred in considering her race and gender in its decision to impose the maximum sentence, thereby violating R.C. 2929.11(C). The trial court noted on its sentencing worksheet that she is a "female-black." The state contends that the notation of race and gender was included merely for a record-keeping function pursuant to R.C. 2953.21(A)(5) and that Kershaw's race and gender cannot be shown to have influenced the sentence that the court imposed.

This court does not agree that the notation of race and gender on the felony sentencing worksheet is appropriate in fulfilling any record-keeping requirements of R.C. 2953.21(A)(5), which have not yet been implemented and apply only to postconviction proceedings. The felony sentencing worksheet is intended to be a documentation of the trial court's reasoning in imposing the sentence that it selects, and not to be a reference point for future statistical analysis of sentencing disparity. Nonetheless, we find the following language of *State v. Howard*[3] to be applicable to the instant case: "We can see no reason for the notation on the sentencing worksheet. But because the record does not clearly

---

**1.** See R.C. 2953.08(A)(1)(a).

**2.** *State v. Richmond* (Mar. 13, 1998), Hamilton App. No. C–970518, unreported, 1998 WL 107653.

**3.** (Sept. 11, 1998), Hamilton App. No. C–971049, unreported, 1998 WL 597651.

and convincingly demonstrate that gender and race were considerations in [the defendant's] sentence, we are constrained from doing no more than admonishing the court that even the notation of race and gender in the 'Comments' section of the sentencing worksheet creates an unfavorable impression."

Therefore, we reiterate that the practice of including race and gender on the worksheet is inappropriate, but we reject Kershaw's claim of reversible error in this case. A possible, but now clearly disapproved, reason for the notation existed up to the date of the *Howard* decision. But for sentences imposed after that date, we will agree with Judge Doan's separate concurrence that follows.

Kershaw next contends that the record does not support the trial court's findings that she had a substance-abuse problem and that she had expressed no remorse. This contention is not persuasive. The information provided to the trial court at the sentencing hearing indicated that Kershaw consumed relatively large quantities of alcohol and marijuana on a daily basis. As for remorse, the trial court was in the best position to determine the genuineness of the remorse expressed by Kershaw in the proceedings below.

Kershaw's final argument with respect to sentencing is that the trial court erred in finding that she had committed the worst form of the offense. To impose the maximum sentence, the trial court must find that at least one of the factors enumerated in R.C. 2929.14(C) is applicable. Here, the court found that Kershaw committed the worst form of the offense.

We agree with Kershaw's argument, but we begin by acknowledging the difficulty of reviewing the nebulous concept of the "worst" form of the offense. Given any set of facts, one would be able to conceive of a worse form of the offense that could be committed. Further clouding the issue is the question of whether the specific circumstances of the case are to be considered in determining whether the worst form of the offense has been committed, or whether we should apply a purely objective standard. An argument could even be made that the "worst" offense could only occur once, which is certainly not what the legislature intended. We believe that because "form" is preceded by the "worst," there can be more than one offense that qualifies as the "worst form."

▪ While acknowledging the abstract nature of the statutory factor, we hold that the facts of the instant case do not represent the worst form of voluntary manslaughter. In the case at bar, the victim of the offense came to Kershaw's residence not once but twice and persisted in her threatening, challenging, and inflammatory comments. Kershaw at first attempted to contact police to resolve the situation but stated that she despaired of resolving the conflict in a peaceable manner. Further, although self-defense was not proved by a preponderance of the evidence, because Kershaw chased the victim into the neighbor's yard, the

trial testimony indicated that Anderson was known to be violent and on the night in question did act in an overtly hostile and threatening manner in advancing toward Kershaw.

Moreover, the circumstances surrounding the actual commission of the crime do not support a finding that Kershaw committed the worst form of the offense. Kershaw fired a warning shot before actually turning the gun on Anderson. Further, the commission of the crime did not involve torture or other aggravating circumstances. Though we are mindful that the facts—specifically Kershaw's threat to shoot Anderson and her retrieval of the gun from the nightstand—do tend to suggest a certain degree of premeditation on Kershaw's part, that circumstance alone does not render this the worst form of the offense. We therefore hold that the trial court erred in imposing the maximum sentence and sustain Kershaw's first assignment of error.

## II. SUFFICIENCY

In her second assignment of error, Kershaw claims that the conviction was based upon insufficient evidence. In the review of the sufficiency of the evidence, the relevant inquiry for the appellate court "is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." [4]

In this case, the prosecution provided ample evidence to prove the offense. The voluntary manslaughter statute, R.C. 2903.03(A), provides, "No person, while under the influence of sudden passion or in a sudden fit of rage, either of which is brought on by serious provocation occasioned by the victim that is reasonably sufficient to incite the person into using deadly force, shall knowingly cause the death of another."

The state presented evidence that Kershaw, while involved in a confrontation with Anderson, knowingly discharged the firearm at Anderson, thereby causing her death. Thus, the state presented sufficient evidence as to the offense and the firearm specification.

Under this assignment, Kershaw also claims that the verdict was based upon insufficient evidence because she had proved self-defense. This argument is conceptually flawed in that the proof of self-defense does not negate an element of the offense but rather establishes a legal justification for the offense. A sufficiency argument applies solely to the quantum of proof adduced by the state

---

4. *State v. Waddy* (1992), 63 Ohio St.3d 424, 430, 588 N.E.2d 819, 825 (quoting *Jackson v. Virginia* [1979], 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560, 573).

as to the elements of the offense. Therefore, we treat Kershaw's argument, *infra*, as one involving the weight of the evidence.

We overrule the second assignment of error.

## III. WEIGHT OF EVIDENCE

In the third assignment, Kershaw states that the conviction was against the manifest weight of the evidence. Specifically, she argues that the jury's rejection of her claim of self-defense was contrary to the evidence. This argument is not persuasive.

■ To reverse a jury's decision as against the manifest weight of the evidence, a reviewing court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and conclude that, in resolving the conflicts in the evidence, the jury clearly lost its way and created a manifest miscarriage of justice.[5]

■ To establish self-defense, the defendant must prove by a preponderance of the evidence that the slayer (1) was not at fault in creating the situation giving rise to the affray, (2) had a bona fide belief that he was in imminent danger of death or great bodily harm and that his only means of escape was the use of lethal force, and (3) did not violate any duty to retreat or avoid the danger.[6]

■ Here, the evidence justified the jury's rejection of self-defense as to any of the three elements that Kershaw was required to prove. First, the evidence indicated that Kershaw caused the escalation of the confrontation by threatening Anderson, retrieving the firearm, and pursuing Anderson off of her property, thus permitting the jury to find Kershaw at fault in creating the situation that led to Anderson's death. Second, since Anderson was not armed, the jury could properly have concluded that infliction of death or great bodily harm was not necessary for Kershaw to avoid the danger. Third, because the shooting occurred away from Kershaw's residence and outside the boundaries of her property, the jury could reasonably conclude that Kershaw had a duty to retreat, or more properly, not to pursue. In any event, we cannot say that the jury lost its way and created a manifest miscarriage of justice in rejecting Kershaw's claim of self-defense.

We overrule the third assignment of error.

---

**5.** *State v. Thompkins* (1997), 78 Ohio St.3d 380, 386, 678 N.E.2d 541, 546.

**6.** *State v. Jackson* (1986), 22 Ohio St.3d 281, 283, 22 OBR 452, 453–454, 490 N.E.2d 893, 896.

## IV. FOURTH ASSIGNMENT

In the fourth and final assignment of error, Kershaw's counsel represents that he can find no other error present in the record and requests this court to independently review the record for any such error. Having reviewed the entire record, counsel's briefs, and all applicable authorities, we find no other error in the trial court's judgment.[7] The fourth assignment of error is accordingly overruled.

## V. CONCLUSION

This is a lead opinion, with this author stating the only consensus. Judge Doan agrees that the sentence must be reversed because this was not the worst form of the offense, but he objects to our failure to reverse also because of the race and gender notation. Judge Hildebrandt agrees with the lead opinion's treatment of race and gender, or the *Howard* issue, but dissents from the reversal on the "worst form" issue. All concur with the overruling of the other three assignments.

Thus, having overruled each assignment of error except that relating to the imposition of the maximum sentence, we affirm in part the judgment of the trial court, reverse the judgment in part, and remand the cause to the trial court for resentencing consistent with the foregoing.

*Judgment accordingly.*

DOAN, P.J., concurs in part and concurs in judgment.

HILDEBRANDT, J., concurs in part and dissents in part.

DOAN, Presiding Judge, concurring in part and concurring in judgment.

I concur with the lead opinion regarding imposition of the maximum sentence. I respectfully disagree with the lead opinion as to appellant's contention that the trial court erred in considering her race and gender in sentencing.

R.C. 2929.11(C) precludes sentencing an offender based upon race, ethnic background, gender, or religion. While the trial court did not specifically state that it was basing the sentence on race or gender, and I do not believe that the trial court actually based the sentence upon such considerations, it did write "female-black" in the comments section of the sentencing-findings form, commonly referred to as the sentencing worksheet. The form is designed to contain the mandated matters for consideration in selecting a sentence. The "comments"

---

7. See *Anders v. California* (1967), 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493.

portion is logically available to expand on the listed considerations by noting information pertinent to one or more of the listed items. The insertion of the notation "female-black" does not relate to the mandated considerations and implicitly impresses a detached reader that the notation was, or at least possibly could have been, a part of the sentencing considerations.

In fairness, it may be the trial court was intending to keep a personal statistical record pertaining to race and gender sentencing, not required by statute or rule, in anticipation of a petition for postconviction relief under R.C. 2953.21(A)(5) alleging sentencing disparity. To keep such a record is understandable and commendable, considering current disparity concerns and accusations visited upon sentencing judges, but the sentencing worksheet form is not the appropriate place to do it absent a specified explanatory section for such record-keeping. The challenged information on the sentencing worksheet being here reviewed can generally be separately obtained and recorded from other documents available to the courts such as the arrest forms or presentence investigation reports.

I must reluctantly conclude that the sentencing worksheet contemplates only appropriate sentencing considerations, and that the notation "female-black" thereon, without other explanation, must be viewed as a reflection that gender and race were considered as a basis of sentencing in violation of R.C. 2929.11(C). I would therefore overrule *State v. Howard,* cited in the lead opinion.

I would also reverse and remand for resentencing in compliance with R.C. 2929.11(C) and the appropriate statutory sentencing guidelines.

HILDEBRANDT, Judge, concurring in part and dissenting in part.

I agree that the notation of Kershaw's race and gender on the sentencing worksheet was not reversible error for the reasons that we stated in *Howard.* However, because I believe that the trial court properly found this to be the worst form of the offense, I respectfully dissent.

As acknowledged by the lead opinion in this case, the concept of the "worst" form of the offense is somewhat amorphous. The difficulty in applying the standard, though, should not prevent this court from according deference to the trial court's decision with respect to its sentencing findings. As with other matters, the trial court is in the best position to evaluate the evidence adduced before it, including the severity of the crime and the relative egregiousness of the defendant's actions.

In the case at bar, the evidence indicates that Kershaw had threatened to shoot Anderson a considerable amount of time before the shooting actually occurred, and that she had pursued Anderson for some distance before committing the homicide. Thus, Kershaw's own actions demonstrate that the shooting was

premeditated and not an act of self-defense or uncontrollable passion, as Kershaw would have us believe. The evidence further indicates that Kershaw was fully aware that she had the recourse to call the police to handle the situation in a peaceable manner, and that she chose instead to exact her own form of street justice. Based upon these factors alone, the trial court was completely justified in finding that the worst form of involuntary manslaughter had occurred. Therefore, I would affirm the judgment of the trial court in all respects, and I accordingly dissent from the decision to vacate the sentence.