OPINION
Craig A. Portman appeals from his conviction and sentence in the Clark County Court of Common Pleas for voluntary manslaughter in violation of R.C. 2903.03. In three related assignments of error, Portman contends that the trial court erred when it sentenced him to the maximum term of imprisonment allowed under Ohio law.
Under R.C. 2929.14(C), a trial court may impose a maximum prison term when a defendant meets at least one of the following criteria: (1) the defendant committed the worst form of the offense; (2) the defendant poses the greatest likelihood of committing future crimes; (3) the defendant is a major drug offender; or (4) the defendant is a repeat violent offender. In addition, R.C. 2929.19(B)(2)(d) mandates that if a trial court imposes a maximum prison term, it must set forth the reasoning behind its determination that a defendant fits within one or more of the foregoing categories.
In the present case, Portman pled guilty to voluntary manslaughter in exchange for the dismissal of a murder charge against him. The record before us contains little information concerning the circumstances of Portman's crime. It is apparent, however, that his voluntary manslaughter conviction stems from an argument he had with Anita Arnold, the victim. During the argument, Arnold struck Portman in the head with a frying pan. Portman then picked up a knife and stabbed Arnold, who died within minutes.[1] At a May 31, 2001, sentencing hearing, the trial court made the following findings when imposing the maximum prison sentence allowed under Ohio law:
 "In reviewing the factors of this case, pursuant to 2929.12(B), (C), (D), (E), 2929.13(D), 2929.14(B) and (C), the Court has taken into consideration all of the facts that have been before it in the Court file, all the facts in the presentence investigation. It appears that there were two individuals who were both under the influence of something, drugs or alcohol, arguing over, from what we know, something fairly senseless and both resulted [sic] to acts of violence, either of which could and to some extent did cause serious physical injury and death and now everybody's sorry. The charge was murder. The conviction is for voluntary manslaughter.
 "Under 2929.12(B), the Court finds the victim suffered serious physical harm. The victim is dead. The Court finds that the relationship of the Defendant to the victim facilitated the act. Under the facts that are before the Court, the Court does find that under 2929.12(C) there was strong provocation. Under the factors of recidivism under 2929.12(D), the Court finds an unacknowledged substance abuse pattern, prior delinquency, a conviction record excuse me, let me make that more accurate.
 "The Court has no record of juvenile convictions. The Defendant is 45 years old; but going back to 1985, that is not a conviction, that's a pretrial probation for domestic violence. `87 is the first conviction for domestic violence. `99 is another domestic violence conviction for which you were placed on probation. That was violated the next year.
 "There appears to be some substance abuse problem that you're not acknowledging the extent of and I have read your statements, I've listened. I'm having trouble finding I do not, in fact, find a genuine remorse for what happened that night. This is a felony of the first degree. Presumption is for prison unless the factors under 2929.13(D) are found by the Court. I find none of those factors are present in this case. I find that a minimum term would demean the seriousness of the offense and would not adequately protect the public and under 2929.14(C), I find that with the facts present in this case, it is the worst form of the offense of voluntary manslaughter and that you do possess the greatest likelihood of recidivism. Your first reaction upon being struck in the argument was to pick up a deadly weapon and to stab, and you have prior offenses of violence.
It is the order of the Court the Defendant be sentenced to 10 years in the Ohio State Penitentiary. . . ." (May 31, 2001, Tr. at 6-8).
In a subsequent sentencing entry, the trial court made the following findings:
 "1) defendant has prior offenses of violence and a prior delinquency or convictions, 2) presumption in favor of prison (F-1), 3) defendant caused serious physical harm to victim, 4) offender's relationship to victim facilitated act, 5) defendant has unacknowledged substance abuse pattern, 6) defendant shows no genuine remorse, 7) offender is not amenable to community control and prison is consistent with sentencing purposes, 8) the shortest prison term will demean the seriousness of the offense and will not adequately protect public, 9) defendant has committed the worst form of the offense and poses the greatest likelihood of recidivism." (Tr. Ct. Docket #7 at 1-2).
On appeal, Portman contends in related assignments of error that the trial court erred in finding that he: (1) committed the worst form of the offense of voluntary manslaughter; (2) poses the greatest likelihood of committing future crimes; and (3) is a repeat violent offender. As noted above, absent one of these findings, a defendant may not receive a statutory maximum prison term. See R.C. 2929.14(C).
Upon review, we cannot agree that the trial court erred in imposing a 10-year prison sentence. At a minimum, the record supports the trial court's determination that Portman "poses the greatest likelihood of committing future crimes." As the trial court properly noted, R.C.2929.12(D) provides a list of five non-exclusive factors indicating that a defendant is likely to commit future crimes. In the present case, the trial court found three of those factors to be present: (1) a history of criminal convictions; (2) a pattern of alcohol or drug abuse related to the offense that the defendant refuses to recognize; and (3) a lack of genuine remorse for the offense. See R.C. 2929.12(D)(2), (4), (5). With respect to criminal convictions, the trial court noted that Portman had prior domestic violence convictions in 1987 and 1999, including a probation violation following the second of those convictions. Concerning substance abuse, the trial court noted that Portman was under the influence of alcohol or drugs when he stabbed Arnold, a fact admitted by defense counsel. See May 31, 2000, Tr. at 5. The trial court also concluded that Portman had an unacknowledged pattern of substance abuse. Although the nature of this "pattern" is not apparent from the record on appeal, we note that Portman has not provided us with a copy of his presentence investigation report. Without the ability to review that report, we must presume that it identifies the pattern of substance abuse found by the trial court.[2] "In the absence of a complete record `it will be presumed that omitted evidence supports the finding or conclusion' of the trial court." State v. Roberts (1991),66 Ohio App.3d 654, 657, quoting In re Adoption of Foster (1985),22 Ohio App.3d 129, 131. If the presentence investigation report does not document a pattern of substance abuse, then Portman should have ensured that it became part of the record on appeal. Id. Finally, the trial court concluded that Portman's expression of remorse was not genuine. Although Portman disputes this conclusion, we note that "[a]s for remorse, the trial court was in the best position to determine the genuineness of the remorse expressed by [the defendant] in the proceedings below." State v.Kershaw (1999), 132 Ohio App.3d 243, 247. In light of the foregoing findings, we cannot say that the trial court erred in determining that Portman poses the greatest likelihood of committing future crimes. Accordingly, R.C. 2929.14(C) authorized the imposition of his 10-year prison sentence.
Although our conclusion regarding Portman's potential for recidivism is dispositive of the issue raised on appeal, we pause briefly to address his other two arguments. After reviewing the record, we question whether Portman actually committed the "worst form" of voluntary manslaughter, as found by the trial court. In support of this conclusion, the trial court relied on two findings: (1) the existence of serious physical harm to the victim; and (2) a finding that the Portman's relationship to the victim "facilitated" the killing. Under R.C. 2929.12(B), these two findings, among many others, may support a conclusion that "the offender's conduct is more serious than conduct normally constituting the offense." In the case of voluntary manslaughter, however, the trial court's first finding cannot support such a conclusion. Indeed, in every case of voluntary manslaughter, the victim suffers serious physical harm (i.e., death). With respect to the second factor cited by the trial court, we are unsure how Portman's relationship to Arnold actually "facilitated" his offense. Although the record is not clear on this point, it is possible that Portman and Arnold may have been living together. Even if this is true, however, such a fact does not appear to have "facilitated" the offense in any way. This is not a case of a teacher taking advantage of a student, or a police officer abusing a suspect. In such a case, the nature of the relationship between the offender and the victim may facilitate an offense. In the present case, however, the trial court identified neither the nature of the relationship between Portman and Arnold, nor how that relationship actually facilitated the offense. Finally, to the extent the trial court may have relied on a finding that Portman is "repeat violent offender,"[3] he argues that R.C. 2941.149 precludes such a finding. In relevant part, that provision states: "(A) The determination by a court that an offender is a repeat violent offender is precluded unless the indictment . . . specifies that the offender is a repeat violent offender." In the present case, Portman's indictment includes no such specification. Accordingly, we agree that the trial court could not lawfully impose the statutory maximum prison sentence based on a finding that Portman was a repeat violent offender. Any such finding by the trial court is harmless error, however, given that it properly imposed his sentence based on a finding that he poses the greatest likelihood of committing future crimes.
Based on the reasoning and citation of authority set forth above, we hereby AFFIRM the judgment of the Clark County Court of Common Pleas.
FAIN, J., and GRADY, J., concur.
(Hon. Stephen W. Powell sitting by assignment of the Chief Justice of the Supreme Court of Ohio).
[1] In its appellate brief, the State contends that several minutes passed between Arnold's striking of Portman and Portman's stabbing of Arnold. The State also contends that Portman reached around a third-party witness in order to stab Arnold. The State provides no citation to support these facts, which are not found anywhere in the record before this court. In fact, during the sentencing hearing, the trial court stated that Portman's "first reaction" upon being hit by Arnold "was to pick up a deadly weapon and to stab. . . ." (May 31, 2000, Tr. at 8).
[2] When imposing Portman's sentence, the trial court did note that it had considered, inter alia, information contained in the presentence investigation report.
[3] As noted above, a finding that a defendant is a "repeat violent offender" is alone a sufficient basis for imposing a statutory maximum sentence.