DECISION
{¶ 1} Defendant-appellant Timothy Ferguson appeals his convictions, sentence, and sexual-predator classification that arose from his commission of a series of burglaries and rapes. We affirm.
 {¶ 2} In 1993, 2001, and 2002, the same horrific scene played itself out for Edra Richard, Jane Hamm, and Jane Eyler — all women over the age of 64, all living in the same general neighborhood. Each time, a man broke into the woman's home, forced her to perform sexual acts (including fellatio, cunnilingus, and vaginal sex), and then stole personal items or U.S. currency.
 {¶ 3} A man also tried to rape Margaret Franks in 2002, but she was able to fight him off before he could rape her or steal from her. Several months later, Franks was in her bedroom when she saw a man masturbating outside her bedroom window. He left without further incident, but left behind several cigarette butts.
 {¶ 4} The victims gave varying descriptions of their attacker, but the police determined that the descriptions were similar with regard to height, weight, age, race, and the fact that the attacker was a heavy smoker. DNA evidence suggested that the same individual had committed all the crimes. But the police had no idea who that person was. Because all the crimes had occurred within a relatively small geographic area, the police set up patrols in the neighborhood.
 {¶ 5} One night on patrol, Sergeant Ken Wells noticed Ferguson walking along the sidewalk, smoking a cigarette. Ferguson was not a suspect at the time. Sergeant Wells approached Ferguson and began a conversation. Ferguson volunteered his name and place of employment, then discarded his cigarette on the ground and walked away. After Ferguson was out of sight, Sergeant Wells picked up the cigarette and sent it to the Hamilton County Coroner's Office for analysis. The DNA retrieved from the cigarette matched the DNA evidence from the rapes and the masturbating incident.
 {¶ 6} Police then arrested Ferguson, and he submitted to a buccal (inside the cheek) swab for more DNA testing. The DNA from the buccal swab matched the DNA from the cigarette and from the crimes.
 {¶ 7} Ferguson was charged with 21 counts in relation to attacks on six elderly women. Nine counts were for rape, six for aggravated burglary, five for aggravated robbery, and one for the attempted rape of Franks. Ferguson stipulated that all the events in the indictment had occurred, but insisted that he was not the individual who had committed the crimes. Because of his stipulation, the state only had to prove that Ferguson was the offender. And because there was DNA evidence definitively linking Ferguson to three of the victims, this was not a difficult task.
 {¶ 8} None of the victims testified at trial because none of the victims could identify her attacker. Most of the testimony centered on the investigations and medical treatments surrounding the attacks, as well as the DNA evidence. One of the attending nurses testified that Eyler was a virgin prior to the attack. Ferguson presented several character witnesses, as well as one witness who offered a possible alibi, but that alibi did not stand up on cross-examination. Ferguson attacked the DNA evidence because of some "peaks" in the analysis. But the jury was convinced on most of the counts: it found Ferguson guilty of 13 of them. Three of the counts had already been dismissed, and the jury found Ferguson not guilty of four of the counts relating to an alleged victim for whom there was no DNA evidence.
 {¶ 9} The trial court sentenced Ferguson to a total of 98 years' imprisonment on 12 of the counts (it dismissed one of the aggravated-burglary counts). It imposed maximum, consecutive sentences on all of the counts. And the trial court determined that Ferguson was a sexual predator because he was a serial rapist of elderly women.
 {¶ 10} On appeal, Ferguson assigns four errors: (1) the trial court should not have allowed the testimony relating to Eyler's statement to her nurse that she had been a virgin; (2) the convictions were against the sufficiency and the manifest weight of the evidence; (3) it was error to determine that Ferguson was a sexual predator; and (4) his sentence was improper.
 I. Irrelevant Evidence or Medical Exception? {¶ 11} In his first assignment, Ferguson argues that the testimony regarding Eyler's virginity was irrelevant and denied him a fair trial. Ferguson is mistaken.
 {¶ 12} Anne Steele, the nurse who attended to Eyler after her rape, testified about the circumstances surrounding the examination. Steele testified that she was unable to use a speculum (a dilating instrument used for medical examinations) because there was excessive swelling. The prosecutor then asked whether she had asked Eyler about her sexual history, as well as what Eyler's response was. Steele's answer: "She told me she was a virgin." Ferguson's trial counsel objected to this testimony, and Ferguson now claims that the statement was elicited solely for the purpose of inflaming the jury.
 {¶ 13} "Statements made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment" are admissible as an exception to the hearsay rule.[1]
Eyler's statement was therefore properly admitted because it was a statement about her medical history, as well as being one that was for purposes of medical treatment.
 {¶ 14} Ferguson also contends that Steele's testimony should have been stricken because its probative value was substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury.[2]
 {¶ 15} We are not sure why the state made a point to introduce this testimony (especially considering the fact that Ferguson had stipulated that the crimes had occurred). Steele's testimony only covered four pages in the trial transcript. But we cannot say that its probative value — namely, why the only DNA sample from Eyler's attack came from a blanket — was substantially outweighed by any danger of prejudice.
 {¶ 16} We therefore overrule Ferguson's first assignment of error.
 II. Sufficiency and Weight of the Evidence {¶ 17} In his second assignment, Ferguson argues that his convictions were against the sufficiency and the manifest weight of the evidence, and that the trial court should have granted his motion for an acquittal.
 {¶ 18} In reviewing a record for sufficiency, we must determine whether any rational trier of fact could have found the essential elements of the crime proved beyond a reasonable doubt, when viewing the evidence in the light most favorable to the prosecution.[3]
 {¶ 19} A review of the manifest weight of the evidence puts the appellate court in the role of a "thirteenth juror."[4] We must review the entire record, weigh the evidence, consider the credibility of the witnesses, and determine whether the trier of fact clearly lost its way and created a manifest miscarriage of justice.[5]
 {¶ 20} "No judgment resulting from a trial by jury shall be reversed on the weight of the evidence except by the concurrence of all three judges hearing the case."[6] And a new trial should be granted on the weight of the evidence only in exceptional cases.[7]
 {¶ 21} When reviewing a challenge to the trial court's denial of a Crim.R. 29 motion, an appellate court is required to determine whether reasonable minds could have reached different conclusions as to whether the state had proved each material element of the offense beyond a reasonable doubt.[8]
 {¶ 22} As we have already stated, Ferguson stipulated to every element of the charged offenses, save for his identity as the offender. So that was all that remained for the state to prove. And this was not a difficult task.
 {¶ 23} There was direct DNA evidence for three of the four victims. And there was DNA evidence from the masturbating incident for the fourth victim. All of it matched Ferguson's DNA. Criminologist Joan Burke testified that a similar DNA profile would occur only once in approximately 2,223,000,000,000,000 African-Americans, and only once in approximately 3,824,000,000,000,000 Caucasians. That puts the odds for another culprit in the quintillions. And those are some impressive numbers.
 {¶ 24} The evidence for the crimes against Franks was not direct. She was the only victim who was able to successfully fight off Ferguson's attempt. Consequently, he did not leave any DNA evidence behind when he burglarized her home and attempted to rape her. But Ferguson did go back to the Franks home and was caught masturbating outside her bedroom window. He left cigarette butts behind, and the DNA from those cigarettes matched the rest of the DNA in this case.
 {¶ 25} In addition, evidence of other acts may be introduced to establish the identity of a perpetrator by showing that he has committed similar crimes and that a distinct plan or scheme was used in the commission of the charged offense.[9] Those acts, in turn, show an offender's modus operandi and provide a behavioral fingerprint that, when compared to the other acts, can be used to identify the offender.[10]
 {¶ 26} Here, the crimes against the other three victims served as "other acts" evidence. The description of the offender was roughly the same. Like the other victims, Franks was an elderly woman who was alone at the time of the attack. The attack occurred at night, after the offender had trespassed in her home. The offender tried to rape her. All of this occurred in the same basic neighborhood during the same basic time as the other attacks. And Ferguson saw fit to return to the scene of the crime and engage in self-gratification outside Franks's window.
 {¶ 27} Viewing the evidence in the light most favorable to the prosecution, a rational trier of fact certainly could have found Ferguson guilty on all the counts on which he was convicted. And reasonable minds certainly could have reached that conclusion based on the evidence before them. His conviction was therefore not against the sufficiency of the evidence, and the trial court did not err in denying his motion for an acquittal.
 {¶ 28} The question of manifest weight is a bit closer, but not close enough to merit a reversal. Ferguson notes that none of the victims could identify him, that there were no fingerprints anywhere at the crime scenes, and that the victims described him as taller than he actually was. He stresses that he had his own apartment and a steady job, so there was no need for him to rob these women. He asks that we examine his character witnesses' testimony, in which everybody agreed that Ferguson was a good member of the community and a good man. But when weighed against the DNA evidence, none of that makes much difference.
 {¶ 29} Ferguson also claims that the DNA evidence was flawed. He notes in his appellate brief that the DNA profiles used to identify him exceeded the protocols set forth in the training manual. Specifically, he points to several "peaks" in the findings that exceeded the standard, claiming that these peaks gave rise to reasonable doubt. But the criminologist who performed the DNA tests testified that the protocols were merely guidelines, and that the peaks could have been caused by extraneous noise. She also testified regarding some of the specific readings that Ferguson attacked: "These extraneous peaks d[id] not represent contamination. If it was contamination, I would see many peaks that would flow along the same lines as an actual sample."
 {¶ 30} Any of the problems with the DNA evidence went to its weight. And the jury, which was in the best position to determine the credibility of the witnesses, apparently believed the criminologist and the DNA evidence. We cannot say that it clearly lost its way or created a manifest miscarriage of justice in finding Ferguson guilty; his convictions were not against the manifest weight of the evidence.
 {¶ 31} We therefore overrule Ferguson's second assignment of error.
 III. Is Ferguson a Sexual Predator? {¶ 32} In his third assignment, Ferguson argues that the trial court erred when it determined that he was a sexual predator under R.C. 2950.09. His argument has no merit.
 {¶ 33} For any sentencing held after May 7, 2002, in a case where an offender has been found guilty of a sexually oriented offense, the trial court must conduct a hearing prior to sentencing to determine whether the offender is a sexual predator.[11] To classify an offender as a sexual predator, the trial court must find by clear and convincing evidence that the offender is likely to engage in one or more sexually oriented offenses in the future.[12]
 {¶ 34} And the trial court must consider the following factors: (1) the offender's age; (2) his prior criminal record, including sexual offenses; (3) the age of the victim; (4) whether the offense involved multiple victims; (5) whether the offender used drugs or alcohol to impair the victims; (6) previous convictions for sexually oriented offenses; (7) mental illness or disability of the offender; (8) the nature of the conduct and whether it was part of a pattern of abuse; and (9) whether the offender displayed cruelty in the commission of the offense.[13]
 {¶ 35} Here, Ferguson was convicted of seven counts of rape and one attempted rape. The trial court considered all the evidence presented at trial in determining that Ferguson was a sexual predator. While Ferguson's performance on a psychological test placed him in the "medium to low-risk" category, we believe that the trial court was correct in finding him to be a sexual predator.
 {¶ 36} These were the very definition of sexually oriented offenses. At the time of the offenses, Ferguson was between his mid-thirties and forties. There were multiple victims, and all were elderly women. At the hearing, the trial court stated, "This is a demonstrated pattern of violent sexual assault. I find that the very act of rape in these cases is an act of cruelty, and I find that the defendant is a serial rapist. He is precisely the kind of person for whom the sexual predator designation was adopted by the legislature. I do find not only by clear and convincing evidence but beyond any doubt that the defendant is a sexual predator."
 {¶ 37} Ferguson now argues that, because of the length of the sentences and his age, he was not likely to ever be released from prison, and therefore not likely to commit any sexual offenses in the future. But we agree with the trial court; Ferguson was a serial rapist of the elderly. And he is a sexual predator.
 {¶ 38} We therefore overrule Ferguson's third assignment of error.
 IV. Sentencing {¶ 39} In his fourth and final assignment, Ferguson argues that the trial court erred by imposing the maximum sentence for each count and by making all the sentences consecutive. Ferguson is wrong.
 {¶ 40} In reviewing a criminal sentence, we must determine (1) whether the law provided for the sentence; (2) whether the trial court complied with the purposes and principles of sentencing and followed the proper procedures; and (3) whether the record supports the findings of the trial court.[14]
 {¶ 41} The law provided for Ferguson's sentences. The trial court imposed sentences for eleven first-degree felonies and one second-degree felony. The punishment for a first-degree felony is three to ten years' imprisonment.[15] And the punishment for a second-degree felony is two to eight years' imprisonment.[16] (Two of Ferguson's convictions were under the old sentencing scheme, but the analysis remains the same). The law, therefore, provided for the sentences.
 {¶ 42} The overriding purposes of felony sentencing are to protect the public from future crime and to punish the offender.[17] The trial court stated that it had considered those purposes in imposing the sentences.
 {¶ 43} And the trial court followed all the proper procedures, specifically finding that (1) the victims' age and physical and mental conditions exacerbated their injuries; (2) the victims all suffered serious physical and psychological harm; (3) Ferguson had no remorse at all, let alone genuine remorse; and (4) the shortest prison term would have demeaned the seriousness of each offense and would not have adequately protected the public.
 {¶ 44} Ferguson claims that the trial court did not adequately articulate its findings and did not properly consider all the reasons for imposing the maximum sentence. But the trial court also made specific findings regarding the consecutive and maximum sentences:
 {¶ 45} "You will get the maximum prison term because you committed the worst form of the offense. In my judgment, you pose the greatest likelihood of future crime. You are a serial rapist that committed these crimes against a number of elderly women over a period of ten years, and the consecutive sentences that I'm going to impose are necessary to protect the public and punish you and are not disproportionate to the seriousness of your conduct and the danger, in my opinion, that you pose to the public.
 {¶ 46} "And the physical harm in this case, in all of these cases, is so great or unusual that a single prison term is inadequate."
 {¶ 47} As with the sexual-predator hearing, the record certainly supports the trial court's findings at the sentencing hearing. And it is more than fair to say that a serial rapist of the elderly has committed the worst form of the offense.
 {¶ 48} The trial court properly considered all the relevant sentencing factors, and it properly imposed maximum, consecutive sentences. We overrule Ferguson's fourth assignment of error.
 {¶ 49} Accordingly, we affirm the trial court's judgment.
Judgment affirmed.
Hildebrandt, P.J., and Gorman, J., concur.
[1] Evid.R. 803(4).
[2] Evid.R. 403(A).
[3] State v. Jenks (1991), 61 Ohio St.3d 259, 574 N.E.2d 492.
[4] State v. Thompkins, 78 Ohio St.3d 380, 1997-Ohio-52, 678 N.E.2d 541.
[5] State v. Martin (1983), 20 Ohio App.3d 172, 175, 485 N.E.2d 717.
[6] Section 3(B)(3), Article IV, Ohio Constitution.
[7] State v. Thompkins, 78 Ohio St.3d 380, 1997-Ohio-52, 678 N.E.2d 541, citing State v. Martin (1983), 20 Ohio App.3d 172, 485 N.E.2d 717.
[8] See State v. Bridgeman (1978), 55 Ohio St.2d 261, 381 N.E.2d 184, syllabus.
[9] Evid.R. 404(B).
[10] See State v. Lowe, 69 Ohio St.3d 527, 1994-Ohio-345, 634 N.E.2d 616;State v. Knight (2000), 131 Ohio App.3d 349, 722 N.E.2d 568; State v.Love (June 4, 1997), 1st Dist. No. C-960498.
[11] R.C. 2950.09.
[12] R.C. 2950.09(B)(3).
[13] R.C. 2950.09(B)(2).
[14] State v. Kershaw (1999), 132 Ohio App.3d 243, 724 N.E.2d 1176.
[15] R.C. 2929.14(A)(1).
[16] R.C. 2929.14(A)(2).
[17] R.C. 2929.11.