OPINION
{¶ 1} Defendant-appellant Raymond Crites appeals the decision of the Mahoning County Common Pleas Court which sentenced him to the maximum sentence of ten years for a first degree felony. He argues that the record does not support the trial court's finding that this was the worst form of the offense of voluntary manslaughter. For the following reasons, the judgment of the trial court is affirmed.
 STATEMENT OF FACTS {¶ 2} Appellant lived in John Deiley's house until he was asked to leave. Appellant left but took his key with him. Thus, on June 26, 2003, Mr. Deiley went to appellant's new residence to retrieve his house key. After words were exchanged, appellant shot Mr. Deiley, and Mr. Deiley died.
 {¶ 3} Appellant was indicted for murder in violation of R.C. 2903.02(A), which entails purposely causing the death of another. He was also charged with a firearm specification.
 {¶ 4} On April 28, 2004, in exchange for appellant's guilty plea, the state amended the charge to voluntary manslaughter in violation of R.C.2903.03(A), which is a first degree felony that entails knowingly causing the death of another while under the influence of sudden passion or in a sudden fit of rage, either of which is brought on by serious provocation occasioned by the victim that is reasonably sufficient to incite the person into using deadly force. Thus, appellant pled guilty to voluntary manslaughter and the firearm specification.
 {¶ 5} A sentencing hearing proceeded on June 24, 2004. The victim's brother presented a compelling argument as to why appellant should be sentenced to the maximum. The state and defense jointly recommended three years on the firearm specification to be followed by nine years on the voluntary manslaughter. Instead, the court sentenced appellant to three years on the firearm specification to be followed by the maximum sentence of ten years on the voluntary manslaughter. Appellant filed timely notice of appeal.
 ASSIGNMENT OF ERROR {¶ 6} Appellant's sole assignment of error provides:
 {¶ 7} "The trial court erred in imposing the maximum term of imprisonment on a charge of voluntary manslaughter without a proper foundation to satisfy the requirement that the offender committed the worst form of the offense as mandated by 2929.14(C) of the Ohio revised code."
 {¶ 8} At the sentencing hearing, the trial court stated that appellant's relationship with the victim facilitated the offense and made the offense more serious. (Tr. 29). In fact, the victim's brother stated that the victim took appellant into his home after appellant was released from jail, provided for him for two years, and trusted him. (Tr. 6). The trial court also stated on the record:
 {¶ 9} "* * * the way things used to be when I was a younger man, if you got in an argument with somebody, you fought them; you punched them or kicked them or bit them or threw something at them, which — but you didn't take a gun and shoot them. I can't believe that this is anything less than the worst form of the offense." (Tr. 31).
 {¶ 10} As can be seen, the court made the worst form of the offense finding as required by R.C. 2929.14(C). See, also, State v. Edmonson
(1999), 86 Ohio St.3d 324, 328-329. And, the court set forth reasons in support of the findings as required by R.C. 2929.19(B)(2). Both the finding and the reasons were set forth at the sentencing hearing as is mandated by R.C. 2929.19(B)(2). State v. Comer, 99 Ohio St.3d 462,2003-Ohio-4165, ¶ 20 (interpreting "on the record" to mean at the sentencing hearing with regards to consecutive and non-minimum sentences).
 {¶ 11} Still, appellant contends that the court's reason regarding the use of a firearm is insufficient to support a worst form of the offense finding. Basically, he argues that his sentence is contrary to law because it is unsupported by the record. He notes that he already pled to a firearm specification in conjunction with the offense.
 {¶ 12} Voluntary manslaughter can be committed in various ways. Firearms are known to be extremely dangerous and deadly weapons. The provocation alleged to have emanated from the victim varies in each case. Here, the victim's brother opined that there was no provocation and complained that the case should have gone to trial on the original murder charge. The trial court could reasonably find that using a firearm to shoot another in response to an argument about the return of the victim's house key is one of the worst forms of voluntary manslaughter under the totality of the circumstances existing herein including the accompanying factors regarding the relationship and the questionable provocation.
 {¶ 13} Contrary to appellant's contention, conviction of a firearm specification does not erase the fact that a gun was used when making a sentencing decision on the main offense. In fact, a firearm specification does not even require a loaded or operable gun, just one that can readily be made operable. R.C. 2923.11(D)(1). See, also, R.C. 2941.145(D). Thus, voluntary manslaughter with a gun and an accompanying gun specification are not overlapping or inclusive of each other for purposes of sentencing as appellant suggests.
 {¶ 14} Appellant cites a case out of the First District where that appellate court reversed a maximum sentence entered after a jury acquitted the defendant of murder but convicted him of voluntary manslaughter with a firearm specification. State v. Kershaw (1999), 132 Ohio App.3d 243. That court noted that it is difficult to review the nebulous and abstract concept of the worst of the form offense. Id. at 247. Still, the court determined that the facts of the case before them did not represent the worst form of the offense of voluntary manslaughter. Id.
 {¶ 15} The court relied on testimony that the victim came to the defendant's residence twice and persisted in making threatening, challenging, and inflammatory comments. Id. The court also noted testimony establishing that the victim was known to be violent and acted overtly hostile and threatening while advancing on the defendant. Id. at 247-248. Finally, the court pointed out that the defendant fired a warning shot prior to turning the gun on the victim. Id. at 248.
 {¶ 16} As the state points out, the Kershaw decision did not mention what reasons the trial court gave in support of its worst form of offense finding. It is thus likely that the trial court in that case failed to give any reasons in support of its finding and the appellate court was unwilling to give the trial court another chance at a maximum sentence on remand. Furthermore, that court had an entire transcript from a jury trial to review. The case before us arose from a plea agreement. Additionally, the allegations of provocation were stronger in Kershaw
than here. Consequently, our case is distinguishable.
 {¶ 17} Regardless, we are not bound by a First District case. The dissent in that case pointed out that there were factors making it one of the worst forms of the offense, such as threatening the victim before retrieving the gun and chasing the victim. Id. at 251 (Hildebrandt, J., dissenting). As such, the rationale in Kershaw is not persuasive.
 {¶ 18} Further, the Kershaw court talked about a de novo review and implied that they were permitted to review the facts and circumstances anew and use their own discretion to determine whether the record supports a maximum sentence. Yet, the relevant statute requires the appellate court to clearly and convincingly find that the sentence is contrary to law before reversing. R.C. 2953.08(G)(2)(b) (also stating that our standard of review is not for an abuse of discretion).
 {¶ 19} Finally, the mitigating element of provocation is inherent in the crime of voluntary manslaughter. As such, the fact of provocation does not mean that this offense was less serious than other forms of the offense of voluntary manslaughter. State v. Craft, 6th Dist. No. F-02-016, 2003-Ohio-68, ¶ 53.
 {¶ 20} Moreover, it has been stated that the sentencing court can choose to place minimal or no weight on the provocation element where the facts and circumstances surrounding the offense tend to show something more than the offense contained in the plea bargain. Id. In fact, the court can consider facts that underlie the plea agreement, such as those that would support the murder charge for which appellant was originally indicted. See State v. Biascochea, 8th Dist. No. 82481, 2003-Ohio-6341, citing State v. Frankos (Aug. 23, 2001), 8th Dist. No. 78072; State v.Humphreys (Nov. 15, 2001), 8th Dist. No. 79008. See, also, State v.Burton (1977), 52 Ohio St.2d 21, 23 (holding that it is well-established that the sentencing court can consider arrests even if no indictment and conviction resulted).
 {¶ 21} These holdings make sense when one considers the existence and use of presentence investigation reports, which are required to detail the circumstances of the offense. See, e.g., Crim.R. 32.2; R.C. 2947.06; R.C. 2951.03. In fact, a presentence investigation report was generated and considered in this case. And, the court here was considering facts surrounding the offense while stating that this was one of the worst forms of the offense because appellant picked up a gun in response to the argument.
 {¶ 22} In conclusion, the trial court did not clearly and convincingly act contrary to law or in a manner unsupported by the record when it determined that appellant committed one of the worst forms of voluntary manslaughter due to his shooting a firearm at the victim, with whom appellant had a prior friendly and trusting relationship, in response to a mere argument.
 {¶ 23} For the foregoing reasons, the judgment of the trial court is hereby affirmed.
Waite, J., concurs. DeGenaro, J., concurs.