OPINION
{¶ 1} Defendant-appellant Michael Harvey appeals from his conviction and sentence on one count of aggravated murder in the Stark County Court of Common Pleas. Plaintiff-appellee is the State of Ohio.
 STATEMENT OF THE FACTS AND CASE {¶ 2} On July 26, 2004, defendant-appellant Michael Harvey was arrested and charged with one count of murder, in violation of R.C. 2903.02(F)(1). On August 20, 2004, appellant was indicted by the grand jury on one count of aggravated murder, in violation of R.C. 2903.01.
 {¶ 3} On October 27, 2004, a psychological examination was ordered to determine whether appellant was competent to stand trial. On December 1, 2004, appellant stipulated to the evaluation and appellant was found competent. A suppression hearing was held on the same date, December 1, 2004. At the end of the suppression hearing, appellant's motion to suppress was overruled.
 {¶ 4} The matter proceeded to a jury trial. The following evidence was adduced at trial. During late morning of July 26, 2004, Bobby Day, the victim, was standing outside the door of a convenience store in downtown Canton, next to the Canton Inn. Day was asking patrons to buy some beer for him. Day was not allowed inside the store because of problems he had caused to employees. Day was seen yelling at someone in the direction of the Canton Inn. According to appellant, Day was yelling at appellant. Eventually, Day got some beer and left.
 {¶ 5} Shortly thereafter appellant came into the store. The clerk at the store noticed a mark on appellant's eye and asked appellant about it. Appellant stated that he had been in a fight with Day a couple of days before. The clerk noticed that appellant was very angry. Appellant said "I'll get him one of these days."
 {¶ 6} After leaving the convenience store, appellant retrieved an aluminum baseball bat from his room at the Canton Inn and went looking for Day. Appellant did so with the purpose to kill Day.
 {¶ 7} In order to find Day, appellant had his cousin drive him around Canton until he found Day walking on the street. Day apparently took off running away upon seeing appellant. Appellant had his cousin drive so as to head off Day. Appellant then got out of the car and sneaked up on Day. Appellant noticed that Day had picked up a metal pipe after he had attempted to run away from him.
 {¶ 8} Appellant walked up to Day unannounced. At the last moment, however, Day turned around to see appellant. Day had no time to defend himself with the pipe. Instead, appellant immediately swung his bat at Day's head, striking him on the side of the head. Day dropped to the ground and appellant proceeded to continue beating him in the head.
 {¶ 9} Construction workers, who were eating their lunch, witnessed the attack. One of them yelled at appellant to stop. However, appellant continued swinging three more times, looked over at the construction worker, and then hit Day two more times about the head. Appellant swung the blood soaked bat over his shoulder and walked away nonchalantly.
 {¶ 10} Appellant initially stopped at the same convenience store he had been at earlier that day. The same clerk noticed that appellant was now carrying an aluminum baseball bat drenched in blood. According to the clerk, appellant seemed nervous as he told her "I think I killed him." Appellant then left the store and went next door to his motel room at the Canton Inn.
 {¶ 11} Police and paramedics responded to the scene of the attack and immediately began looking for appellant. He was detained at the Canton Inn, where he had washed off the baseball bat and changed his clothes. Canton Police Officer John Clark was watching appellant in the hallway while officers secured appellant's room. Appellant volunteered to Clark that "He messed with the wrong guy today." Once the room was secured, appellant was transported to the Canton Police Department for questioning and processing. Tr. I at 197, 203, 205-207.
 {¶ 12} Appellant told the police that he killed Day because he was angry at him. According to appellant, he killed Day because he had to, because everyone was scared of Day. According to appellant, Day had said things to appellant in the past that warranted his death.
 {¶ 13} Subsequently, appellant gave his consent for the police to search his motel room. In the motel room, the baseball bat and his original clothes were collected. These items were found to have Day's blood on them.
 {¶ 14} Evidence showed that Day died from multiple blunt force trauma blows to his face and skull. These injuries produced severe brain injury and hemorrhaging.
 {¶ 15} Appellant did not testify in his defense. Instead, he elicited testimony through defense witnesses and cross examination of the State's witnesses showing that Day had a reputation for being a troublesome, violent person. In addition, appellant's brother, Richard Harvey, testified that at the age of 19, appellant was diagnosed with paranoid schizxophrenia and had in the past been treated at Brecksville Veteran's Hospital. Lastly, defense counsel admitted Day's criminal record into evidence which showed 121 arrests.
 {¶ 16} At the conclusion of the trial, the trial court instructed the jury on the lesser included offenses of murder and voluntary manslaughter. However, the trial court denied appellant's request for a jury instruction on self-defense. Ultimately, the jury found appellant guilty on one count of aggravated murder. A sentencing hearing was held immediately after the jury verdict was returned. Appellant was sentenced to a prison term of 20 years to life.
 {¶ 17} It is from this conviction and sentence that appellant appeals, raising the following assignments of error:
 {¶ 18} "I. THE TRIAL COURT ERRED IN DENYING APPELLANT'S MOTION TO SUPPRESS.
 {¶ 19} "II. THE TRIAL COURT ERRED BY FAILING TO INSTRUCT THE JURY ON THE DEFENSE OF SELF-DEFENSE.
 {¶ 20} "III. APPELLANT'S CONVICTION FOR AGGRAVATED MURDER INSTEAD OF THE LESSER OFFENSE OF VOLUNTARY MANSLAUGHTER WAS AGAINST THE MANIFEST WEIGHT AND SUFFICIENCY OF THE EVIDENCE."
 I {¶ 21} In the first assignment of error, appellant contends that the trial court erred when it denied appellant's motion to suppress. We disagree.
 {¶ 22} There are three methods of challenging on appeal a trial court's ruling on a motion to suppress. First, an appellant may challenge the trial court's findings of fact. In reviewing a challenge of this nature, an appellate court must determine whether the findings of fact are against the manifest weight of the evidence. See: State v. Fanning (1982), 1 Ohio St.3d 19,437 N.E.2d 583; State v. Klein (1991), 73 Ohio App.3d 486,597 N.E.2d 1141; State v. Guysinger (1993), 86 Ohio App.3d 592,621 N.E.2d 726. Second, an appellant may argue that the trial court failed to apply the appropriate test or correct law to the findings of fact. See: State v. Williams (1993),86 Ohio App.3d 37, 619 N.E.2d 1141. Finally, assuming the trial court's findings of fact are not against the manifest weight of the evidence and it has properly identified the law to be applied, an appellant may argue that the trial court incorrectly decided the ultimate or final issue raised in the motion to suppress. When reviewing this type of claim, an appellate court must independently determine, without deference to the trial court's conclusion, whether the facts meet the appropriate legal standard in any given case. State v. Curry (1994), 95 Ohio App.3d 93, 96,641 N.E.2d 1172; State v. Claytor (1993), 85 Ohio App.3d 623, 627,620 N.E.2d 906; and State v. Guysinger, supra.
 {¶ 23} The following evidence was presented at the suppression hearing.
 {¶ 24} During the early afternoon of July 26, 2004, appellant was arrested in his Canton Inn room and transported to the Canton Police Department. Appellant was not questioned at the time of his arrest or this transportation. Upon arriving at the Police Department, appellant was handcuffed to a ring in the wall in a holding room. Detective Lawver of the Canton Police Department walked into the room to take appellant to an interview room. At that time, appellant started to talk about the homicide. Lawver told appellant to stop talking until they got to the interview room and Lawver read appellant his rights. Appellant responded by asking for a cup of coffee, which Lawver left the room to retrieve. Upon returning to the room with the coffee, Lawver then presented a Miranda rights form to appellant. The detective told appellant to ask questions if he did not understand anything. Lawver then read the Miranda rights form to appellant and asked appellant if he understood those rights. Appellant responded that he understood them and agreed to waive them. Appellant then signed the waiver form.
 {¶ 25} Lawver then questioned appellant for 15 minutes. Afterwards, Lawver asked appellant to give a taped statement. Appellant agreed and provided a tape recorded statement. At the beginning of the taped statement, Lawver again notified appellant of his constitutional rights. Appellant reiterated that he understood those rights and agreed to waive them. According to Lawver, appellant appeared calm and in a pleasant mood during the interrogation and appeared to understand each question. To Lawver, appellant did not appear to be under the influence of alcohol or drugs.[1] Lawver testified that appellant responded to the questions in an intelligent manner and was able to carry on a fluent conversation.
 {¶ 26} Appellant testified at the suppression hearing. Appellant admitted that he was not questioned by police before Lawver notified him of his constitutional rights. Appellant agreed that he attempted to talk to Lawver about what happened in the holding room but Lawver told appellant to stop. Appellant also confirmed that Lawver notified him of his constitutional rights before questioning and that appellant had signed the waiver form. However, appellant nonetheless asserted that he did not understand those rights and that he had told Lawver that he did not understand. On cross examination, appellant admitted that he wanted to tell police what had happened without any prompting or questioning from the police. He further admitted that he had been arrested 11 times and been to prison twice for felonies. Last, appellant acknowledged that he understood that he had a right to be silent. Sup. Tr. 34.
 {¶ 27} The trial court found that appellant was read his Miranda rights, understood those rights and voluntarily, knowingly and intelligently waived those rights. In so doing, the trial court noted that appellant had experience with the criminal justice system, that appellant had the knowledge necessary to understand his rights and did, in fact, understand those rights.
 {¶ 28} Appellant contends on appeal that the motion to suppress should have been granted because although appellant recalled being read his rights, he did not understand his rights because he was still in shock and was still thinking about the incident. Appellant points out that the Detective that read appellant his rights did not ask any questions concerning appellant's level of education, ability to read, or mental health background or diagnosis.
 {¶ 29} We find that the record shows that appellant was read his rights and appeared to understand those rights before he was interviewed by police. Appellant's actions after the incident, for example, changing clothes and washing the blood off of the bat, show presence of mind. Further, at no time did appellant indicate to Detective Lawver that he did not understand his rights, and appellant had experience with the criminal justice system.
 {¶ 30} For the foregoing reasons, appellant's first assignment of error is overruled.
 II {¶ 31} In the second assignment of error, appellant argues that the trial court erred when it failed to instruct the jury on the affirmative defense of self-defense. We disagree.
 {¶ 32} When reviewing a court's refusal to give a requested jury instruction, an appellate court considers whether the trial court's refusal to give a requested instruction was an abuse of discretion under the facts and circumstances of the case. Statev. Wolons (1989), 44 Ohio St.3d 64, 541 N.E.2d 443. In order to find an abuse of discretion, we must determine that the trial court's decision was unreasonable, arbitrary or unconscionable and not merely an error of law or judgment. Blakemore v.Blakemore (1983), 5 Ohio St.3d 217, 219, 450 N.E.2d 1140.
 {¶ 33} "Generally, a trial court is required to give all instructions that are relevant and necessary for a jury to weigh evidence and discharge its duty as factfinder. State v. Joy
(1995), 74 Ohio St.3d 178, 181, 657 N.E.2d 503; R.C. 2945.11. The court must give instructions on all issues that are raised by the evidence and that are pertinent, legally correct and not covered by other instructions. See Joy, supra, at 181. However, when the evidence submitted by the defendant is insufficient as a matter of law to support the defense, the trial court commits no error in failing to submit the issue to the jury. See State v.Shane (1992), 63 Ohio St.3d 630, 631, 590 N.E.2d 272; State v.Melchior (1978), 56 Ohio St.2d 15, 20-21, 381 N.E.2d 195.
 {¶ 34} A claim of self-defense requires evidence that the defendant was not at fault in creating the situation giving rise to the affray, that he had a bona fide belief that he was in imminent danger of death or great bodily harm and that his only means of escape was by the use of force, and that he did not violate any duty to retreat or avoid the danger. State v.Kershaw (1999), 132 Ohio App.3d 243, 724 N.E.2d 1176 (citingState v. Jackson (1986), 22 Ohio St.3d 281, 283,490 N.E.2d 893, 896).
 {¶ 35} At trial, appellant's counsel requested a jury instruction on self defense. The trial court denied the request, ruling that "the Court cannot find that the victim was the first aggressor in the incident. Secondly, the testimony clearly from the Defendant himself is that he went up behind the victim and that, by his own words, he did not consider the pipe, which is in evidence, to be a weapon. Accordingly, the Court, based on the duty to retreat, based on the imminent nature, the difficulty of self-defense in the State of Ohio, does not find there is any evidence that is worthy of allowing the jury to consider the affirmative defense of self-defense." Tr. III, 16-17. Upon review of the evidence submitted at trial, we find no abuse of discretion.
 {¶ 36} The evidence showed that appellant went looking for Day. When appellant found Day, appellant ran up behind Day and struck him with a baseball bat. Day immediately collapsed, dropping a metal pole he was carrying. Appellant proceeded to strike Day about the head as Day lay on the ground. Thus, evidence showed that it was appellant that started this incident, not Day. Further, appellant continued to strike Day as he lay on the ground, unarmed. Pursuant to these facts, we agree with the trial court that 1) appellant was at fault in creating the incident that gave rise to appellant killing Day; 2) appellant did not have a bona fide belief that he was in imminent danger of death or great bodily harm and that his only means of escape from such danger was in the use of force; 3) appellant violated the duty to avoid danger and/or retreat. As such, the trial court did not abuse its discretion when it refused to give a jury instruction on self defense.
 {¶ 37} Accordingly, appellant's second assignment of error is overruled.
 III {¶ 38} In the third and final assignment of error, appellant asserts that his conviction for aggravated murder, instead of the lesser offense of voluntary manslaughter, was against the manifest weight and sufficiency of the evidence. We disagree.
 {¶ 39} In State v. Jenks (1981), 61 Ohio St.3d 259,574 N.E.2d 492, the Ohio Supreme Court set forth the standard of review when a claim of insufficiency of the evidence is made. The Ohio Supreme Court held as follows: "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." Id. at paragraph two of the syllabus.
 {¶ 40} On review for manifest weight, a reviewing court is to examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses and determine whether in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed. The discretionary power to grant a new hearing should be exercised only in the exceptional case in which the evidence weighs heavily against the judgment." State v. Thompkins, 78 Ohio St.3d 380,387, 1997-Ohio-52 (citing State v. Martin (1983),20 Ohio App.3d 172, 175, 485 N.E.2d 717). Because the trier of fact is in a better position to observe the witnesses' demeanor and weigh their credibility, the weight of the evidence and the credibility of the witnesses are primarily for the trier of fact. State v.DeHass (1967), 10 Ohio St.2d 230, 227 N.E.2d 212, syllabus 1.
 {¶ 41} Appellant was convicted of aggravated murder, pursuant to R.C. 2903.01(A). That statute states as follows: "No person shall purposely, and with prior calculation and design, cause the death of another. . . ." Appellant contends that he should have been convicted of the lesser offense of voluntary manslaughter, pursuant to R.C. 2903.03(A). That statute states as follows: "No person, while under the influence of sudden passion or in a sudden fit of rage, either of which is brought on by serious provocation occasioned by the victim that is reasonably sufficient to incite the person into using deadly force, shall knowingly cause the death of another. . . ."
 {¶ 42} Appellant asserts that there was ample evidence presented to the jury that showed that appellant acted with sudden passion under a fit of rage. Appellant cites to the verbal and physical abuse inflicted by the deceased against appellant at least three times in the week before this incident[2] and that shortly before the final incident, appellant was agitated with Day. Appellant submits that Day was a person who could evoke a sudden fit of rage from any ordinary person. In addition, appellant argues that his mental condition should be considered. The record shows that appellant was diagnosed with paranoid schizophrenia and had been treated at a hospital.
 {¶ 43} Upon review, we find that appellant's conviction is supported by the evidence. Appellant asserts that appellant and the deceased had a verbal confrontation. However, after the alleged confrontation, Day left the area and appellant went back to his motel room. Appellant then found his cousin and had the cousin drive him around Canton until they found Day. Given the significant break between the alleged verbal exchange and the attack, there is no evidence that appellant acted under sudden rage. Rather, the facts show that appellant acted with prior calculation and design.
 {¶ 44} For the foregoing reasons, appellant's third assignment of error is overruled.
 {¶ 45} The judgment of the Stark County Court of Common Pleas is affirmed.
Edwards, J. Gwin, P.J. and Farmer, J. concur.
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion on file, the judgment of the Stark County Court of Common Pleas is affirmed. Costs assessed to appellant.
[1] In fact, appellant told Lawver that he had been "clean" for a quite a few years.
[2] The three instances referenced by appellant was 1) Day insulted appellant's dead mother; 2) Day hit appellant in the eye with a stick; and 3) Day was "spouting off" about round two. Appellant's Merit Brief, pg. 14.